# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| Garrison Property and Casualty Insurance Company, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No.: 2:15-cv-4379-PMD |
| v. | ) ) | **ORDER** |
| Candace Rickborn, | ) ) | |
| Defendant. | ) ) | |

This matter is before the Court on the parties' competing motions for summary judgment (ECF Nos. 48 & 52), as well as Plaintiff Garrison Property and Casualty Insurance Company's motion to amend its complaint (ECF No. 49). For the following reasons, the Court grants Garrison's summary-judgment motion, finds Garrison's motion to amend moot, and denies Defendant Candace Rickborn's motion.

## BACKGROUND

This declaratory judgment action arises out of an automobile collision involving Rickborn and Alexander Cothran, who was at fault. Rickborn sued Cothran in state court for injuring her by negligently operating his employer's pickup truck. After obtaining a judgment against Cothran in that case, Rickborn made a claim to Garrison seeking liability benefits under an insurance policy that Garrison issued for Cothran's personal vehicle, which was not involved in the collision. Garrison denied Rickborn's claim and then filed this action.

The insuring agreement in Garrison's policy generally states that Garrison will defend and indemnify Cothran for bodily injury and property damages he causes while using any automobile. Garrison contends, however, that coverage is barred under one or more of the

policy's exclusions.  Rickborn disputes that position and argues Garrison is obligated to satisfy the judgment she obtained against Cothran.

## **LEGAL STANDARD**

Summary judgment should be granted when there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The judge may not weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  All evidence should be viewed in the light most favorable to the nonmoving party.  *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990).  "[I]t is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of material fact.  It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor."  *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014) (citations omitted).  "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate."  *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991).

When opposing parties both seek summary judgment, the Court applies the same standard to both motions.  *See Northfield Ins. Co. v. Boxley*, 215 F. Supp. 2d 656, 657 (D. Md. 2002).  The court rules on each motion separately, determining, in each case, whether a judgment may be entered in accordance with Rule 56.  *Id.* at 658.  The mere fact that both parties seek summary judgment "does not establish that there is no issue of fact and require that summary judgment be granted to one side or another."  *Am. Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965)).  Nevertheless, dueling motions for summary judgment "may be probative of the nonexistence of a factual dispute," because "when both parties proceed

on the same legal theory and rely on the same material facts the court is signaled that the case is ripe for summary judgment." *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983) (citation omitted).

## **DISCUSSION**

The parties agree that South Carolina law governs their dispute. In South Carolina, insurance policies are subject to the general rules of contract construction. *Nationwide Mut. Ins. Co. v. Commercial Bank*, 479 S.E.2d 524, 526 (S.C. 1996). The insurer's duties under a policy of insurance are set forth by the terms of the policy and cannot be enlarged or curtailed by judicial construction. *Id.* Therefore, the Court must give clear policy language its plain, ordinary, and popular meaning. *See id*. However, where policy provisions may be reasonably interpreted in more than one way, the court must use the interpretation most favorable to the insured. *State Farm Fire & Cas. Co. v. Barrett*, 530 S.E.2d 132, 136 (S.C. Ct. App. 2000).

Garrison argues that any potential benefits for Rickborn are barred under exclusion A.7 of the policy, which provides as follows:

> A.   We do not provide Liability Coverage for any **covered person**:
>
>    . . . .
>
>    7.   Maintaining or using any vehicle while that person is employed or otherwise engaged in any business or occupation other than the **auto business,** farming, or ranching. This exclusion (A.7.) does not apply to the use of a private passenger auto; a pickup or a **van** that **you** own; or a **trailer** used with these vehicles.

(Compl., Ex. A, Insurance Policy, ECF No. 5, at 20.)[1] The parties agree that, at the time of the collision, Cothran was driving his boss's pickup truck while engaged in an occupation other than

---
1.   Garrison originally argued that exclusion A.6 also bars coverage. It has since abandoned that argument.

3

the auto business, farming, or ranching.[2] They also agree that Cothran did not own the truck he was driving and that no trailer was involved in the collision. This case boils down, then, to one question: is the pickup truck involved in the collision a "private passenger auto"?

Although the policy does not define "private passenger auto," it nevertheless answers the narrow question at bar. Under South Carolina law, "if the meaning of a particular word or phrase cannot be determined from the language itself, a court must read the policy as a whole and consider the context and subject matter of the insurance contract in order to discern the parties' intention." *Linton v. AXA Equitable Life Ins. Co.*, 533 F. App'x 179, 181 (4th Cir. 2013) (per curiam). The words "pickup" and "private passenger auto" appear together throughout the policy as items in disjunctive series. For example, the policy includes the following definitions:

E. **Nonowned vehicle.**

    1. **Nonowned vehicle** means any private passenger auto, pickup, **van, miscellaneous vehicle,** or **trailer** not owned by, or furnished or available for the regular use of, **you** or a **family member**. . . .

    2. A **nonowned vehicle** does not include any of the following vehicles used in any business or occupation other than farming or ranching:

        a. A pickup;

        b. A **van;** or

        c. A **miscellaneous vehicle**.

. . . .

J. **Trailer** means a vehicle designed to be pulled by a private passenger auto, pickup, **van**, or **miscellaneous vehicle**.

. . . .

P. **Newly acquired vehicle**.

---

2. Cothran worked for a boat upholsterer. At the time of the collision, Cothran was driving the truck for work.

4

>    1.   **Newly acquired vehicle** means a vehicle, not insured under another policy, that is acquired by **you** or any **family member** during the policy period and is:
>
>         a.   A private passenger auto, pickup, or **van**; . . . .

(Compl., Ex. A, Insurance Policy, ECF No. 5, at 9, 18, 43.)[3] Although these examples do not state what a private passenger auto *is*, the combination of commas and the disjunctive "or" indicates what it *is not*—a pickup truck, among other things. Nothing in the policy suggests Garrison and Cothran intended for this distinction to disappear in exclusion A.7's exception sentence. To the contrary, that sentence maintains the distinction, separating the terms with semicolons and using "or" to signal those terms' juxtaposition. Thus, "private passenger auto" in exclusion A.7 unambiguously does not include pickup trucks. *Cf. Home Indem. Co. v. Nw. Nat. Ins. Co.*, 280 F. Supp. 446, 448 (D. Mont. 1968) (holding pickup truck was not a "private passenger automobile" under policy; although that term "standing alone might be . . . ambiguous," there was "no room for misunderstanding" whether it included pickups because separate, defined policy term included pickups).

Despite those provisions, Rickborn maintains that pickup trucks constitute private passenger autos under the policy. However, the Court must construe the policy in a manner that gives effect to every one of its provisions. *See Auto-Owners Ins. Co. v. Newman*, 684 S.E.2d 541, 545 (S.C. 2009). "[P]rivate passenger auto" in exclusion A.7 cannot be read to encompass pickup trucks without making the exclusion's "pickup . . . that **you** own" clause superfluous.[4]

---

3.   Two other portions of the policy also list "pickup" and "private passenger auto" as items set in the disjunctive by commas and "or." Because an amendment to the policy deletes those provisions, the Court does not rely on them. It notes, however, that the amendment does not replace those provisions with language suggesting "pickup" and "private passenger auto" have anything but mutually exclusive meanings.

4.   Conceivably, there would be no superfluity if Court were to read "private passenger auto" to include only pickup trucks that policyholders do not own. However, nothing in the policy indicates that whether a vehicle is a private passenger auto depends in any way on whether the policyholder owns it. Moreover, Rickborn's position is, in essence, that exclusion A.7 does not apply to pickup trucks at all. If Garrison and Cothran had so intended, Garrison simply could have written that the exception does not apply to "a pickup," without adding the qualifying

The Court cannot accept that interpretation. *See Newman*, 684 S.E.2d at 545 (rejecting interpretation of policy that would render terms meaningless).

Rickborn bases her position primarily on two South Carolina Code provisions—subsection 38-77-30(5.5)(a) and section 56-3-630—which, she asserts, supply the policy's definition of "private passenger auto." That assertion, however, begs the question, and Rickborn has not offered any interpretative rule or other legal proposition that explains why these statutes apply. The Court has not found any, either.

Subsection 38-77-30(5.5)(a), which provides a definition of "individual private passenger automobile," is part of South Carolina's motor vehicle insurance law. In the context of mandatory insurance coverage, "statutes relating to an insurance contract are generally part of the contract as a matter of law." *Lincoln Gen. Ins. Co. v. Progressive N. Ins. Co.*, 753 S.E.2d 437, 439 (S.C. Ct. App. 2013). However, "liability coverage for . . . non-owned vehicles is not statutorily required in this state and is provided by a voluntary contract between the insurer and the insured. Therefore, the parties may choose their own terms regarding coverage for . . . non-owned vehicles." *Howell v. U.S. Fid. & Guar. Ins. Co.*, 636 S.E.2d 626, 628 (S.C. 2006). South Carolina law therefore does not automatically engraft subsection 38-77-30(5.5)(a) onto "private passenger auto" here because only coverage for a non-owned vehicle is at issue in this case. Moreover, subsection 38-77-30(5.5)(a) does not require that insurance policies use its definition of "individual private passenger automobile" to define similar-sounding terms, nor does it prohibit policies from defining similar-sounding terms differently. *Cf. Lawrimore v. Old*

---

language about ownership. The Court cannot bend over backwards to announce a meaning that Garrison so easily could have drafted. *See Diamond State Ins. Co. v. Homestead Indus., Inc.*, 456 S.E.2d 912, 915 (S.C. 1995) ("[I]f the intention of the parties is clear, courts have no authority to torture the meaning of policy language to extend or defeat coverage that was never intended by the parties." (citation omitted)).

*Republic Ins. Co.*, No. 2:14-cv-1275-RMG, 2015 WL 12807712, at *4 (D.S.C. Feb. 19, 2015) (finding South Carolina law did not require liability policy to apply definition of "motor vehicle" in Code subsection 38-77-30(9) to non-owned truck). Finally, the similarity of "private passenger auto" and "individual private passenger automobile" is not, standing alone, sufficient reason to impose upon a policy a definition that South Carolina law gave Garrison and Cothran the freedom to reject.

The case for considering section 56-3-630 is even weaker. That statute is part of an article of the South Carolina Code that deals exclusively with the creation and collection of vehicle license and registration fees. 1977 Op. S.C. Att'y Gen. 207 (S.C.A.G. Aug. 26, 1977). Section 56-3-630 simply directs the state Department of Motor Vehicles to classify certain types of vehicles "as a private passenger motor vehicle" for the purpose of determining the amount of the fees to collect. Nothing in the policy at issue here suggests Garrison and Cothran intended to use that unrelated statute to define a term of their insurance contract.

To be sure, both statutory definitions include some types of pickup trucks.[5] However, employing the definitions would create the superfluity problem mentioned above. This Court could not adopt such an interpretation unless a countervailing legal principle required that result. As the above discussion illustrates, the Court has not found one. Thus, the Court rejects Rickborn's suggestion to define "private passenger auto" using these statutes.

Next, citing the rule that exclusions are to be construed against the insurer, *see McPherson ex rel. McPherson v. Mich. Mut. Ins. Co.*, 426 S.E.2d 770, 771 (S.C. 1993), Rickborn argues "private passenger auto" must be construed to include pickup trucks because many South Carolinians use pickups as their sole means to transport themselves and passengers. After years

---

5.   Garrison argues that even if those statutes apply, there would still be no coverage because pickup truck at issue here does not fit within either statute's definition. The Court expresses no opinion on that argument.

7

of driving South Carolina roads including everywhere between Long Creek, Little River, Limehouse, and Lake Wylie, the Court can attest that the factual premise of Rickborn's argument is an understatement. Nevertheless, that prevalence of pickups is not persuasive. The command to construe an exclusion against the insurer applies only when the exclusion's meaning is ambiguous. *See State Farm Fire & Cas. Co. v. Nivens*, No. 0:12-cv-151-MBS, 2014 WL 4793987, at *5 (D.S.C. Sept. 25, 2014) (stating the rule applies "'*if* doubt exists as to the extent or fact of coverage'" (quoting *Buddin v. Nationwide Mut. Ins. Co.*, 157 S.E.2d 633, 635 (S.C. 1967)) (emphasis added)). As this Court has explained, exclusion A.7 is not ambiguous on the issue of whether a pickup is a private passenger auto. *Cf. Home Indem. Co.*, 280 F. Supp. at 448 (recognizing that "[c]ertainly under many circumstances a pickup truck is used by its owner as a private passenger automobile," but nonetheless holding that policy, read as a whole, unambiguously excluded pickups from that term).

Finally, Rickborn asserts it would be consistent with other states' insurance laws for this Court to conclude that the pickup truck at issue here is a private passenger auto. The Court, however, is concerned only with being consistent with South Carolina law. With the exception of *Home Indemnity Co.*, which actually undermines Rickborn's position, the cases Rickborn cites do not aid that endeavor.

For the foregoing reasons, the Court concludes that "private passenger auto" in the policy does not include non-owned pickup trucks. Consequently, the private-passenger-auto exception to exclusion A.7 does not apply in this case because Cothran did not own the truck he was driving when he injured Rickborn. Exclusion A.7 therefore applies. Garrison is entitled to summary judgment.[6]

---

6.    Garrison has also asserted that exclusion B.1 bars coverage here. However, Garrison did not rely on that exclusion in denying Rickborn's claim, and it did not mention that exclusion in its complaint. Rather, in a

Turning to Rickborn's motion, she contends that, as a matter of law, she is entitled to a declaration that the policy affords Cothran coverage for the harm he caused her.[7] The above analysis of Garrison's motion prevents the Court from reaching such a conclusion.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Garrison's motion for summary judgment is **GRANTED**, that Rickborn's motion for summary judgment is **DENIED**, and that Garrison's motion to amend is **MOOT**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**December 28, 2016**
**Charleston, South Carolina**

---

commendable display of candor, Garrison's attorney admits he first realized the exclusion was applicable while he was preparing his memorandum in support of Garrison's summary judgment motion. He therefore added arguments about exclusion B.1 to his memorandum, and shortly after he filed for summary judgment, he also filed a motion to amend the complaint in order to add allegations about exclusion B.1. Because exclusion A.7 bars coverage, the Court need not address Garrison's summary-judgment arguments about exclusion B.1. For that same reason, Garrison's motion to amend is moot.

7.    Garrison argues Rickborn cannot seek summary judgment because she has not pled a declaratory judgment claim. The Court declines to address that argument, as Rickborn's summary-judgment arguments fail on their merits.